```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                      FORT WORTH DIVISION
```

D.C. BLUES                        §
                                  §
VS.                               §  CIVIL ACTION NO. 4:06-CV-218-Y
                                  §
CITY OF HURST, ET AL.             §

## ORDER GRANTING MOTION TO DISMISS

In his second amended complaint, plaintiff D.C. Blues has filed suit alleging claims under the Family Medical Leave Act, Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 1981, and the Fair Labor Standards Act. In response, defendant City of Hurst ("the City") has filed a motion (doc. #51) to dismiss under Federal Rule of Civil Procedure 12(b)(6).[1]  After review, the Court concludes that the City's motion should be GRANTED.[2]

---

[1] Although the caption to Blues's second amended complaint lists Richard Ward, Mayor; Allan Weegar, City Manager; Ron Haynes, Public Works Director; and Larry Martin, Operations Engineer, Public Works Department; as defendants, the "Parties and Jurisdiction" section only lists Blues and the City as parties to this case. Further, the second amended complaint makes no allegation against any of these individuals and nothing in the second amended complaint indicates these individuals are being sued in their individual capacities. Thus, the Court will treat the second amended complaint as an action against the City with these named individuals in the caption being sued in their official capacities.

> Official-capacity suits . . . "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978).  As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . .  It is *not* a suit against the official personally, for the real party in interest is the entity.

*Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)(emphasis in original).

[2] The City filed its motion on February 9, 2007, and Blues failed to file a response within the time limits under local rule 7.1(e). On May 14, Blues filed a motion for an extension of time to file a response to the City's motion to dismiss, but the Court ordered his motion unfiled because it failed to contain a certificate of conference in accordance with local rule 7.1(b). Blues refiled his motion but the Court denied it because Blues failed to explain why he was

I. Factual Background

Blues initiated this suit *pro se* in state court. In his complaint filed February 15, 2006, Blues alleged he suffered racial and age discrimination while he worked for the City in the Public Works Department. His complaint alleged that he was denied certain jobs, promotions, the opportunity to work overtime, and overtime pay on one occasion because of his race. His complaint also alleged that he was not treated the same as other employees, and endured verbal threats and racial slurs throughout his employment. He asserted causes of action under 42 U.S.C. §§ 1983(civil action for deprivation of constitutional rights) and 1985 (conspiracy to interfere with civil rights), 42 U.S.C. § 2000e (employment discrimination), and for breach of contract.

The City removed the case to this Court on March 29, 2006. Counsel appeared on behalf of Blues on April 12, and moved for leave to file an amended complaint on April 17. The Court granted leave and on May 10, Blues, through his attorney, filed his first amended complaint.

The first amended complaint continued to allege racial discrimination, but it asserted claims under 42 U.S.C. § 1981 (equal rights under the law), the Civil Rights Act of 1964, the

---

unable to file a response within the time limits under the local rules. On July 2, Blues filed an untimely response without seeking leave from the Court and despite the Court's having denied his request for an extension of time. His response failed to explain why it was untimely filed, and the Court subsequently ordered it unfiled. Thus, the Court will rule on the City's motion without any response from Blues.

Family Medical Leave Act, and the Fair Labor Standards Act. The City filed its first motion to dismiss under Rule 12(b)(6) in response.

Subsequent to the City's motion to dismiss, Blues, through his attorney, sought leave to file a second amended complaint so that he could incorporate by reference the allegations Blues made in his original *pro se* complaint filed in state court. Normally, "an amended complaint supercedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). The Court granted leave to file the second amended complaint and mooted the City's motion to dismiss. The second amended complaint was filed on January 24, 2007. Thereafter, the City filed its second motion to dismiss the second amended complaint under Rule 12(b)(6). Blues's attorney has since withdrawn from representing Blues, and Blues has proceeded *pro se* in this litigation.

II. Analysis

A. Standard

A motion to dismiss under Rule 12(b)(6) for a failure to state a claim "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)(internal quotations and citations omitted).

The court must accept as true all well pleaded, non-conclusory allegations in the complaint, must liberally construe the complaint in favor of the plaintiff, and resolve all doubts in the plaintiff's favor. *See Kaiser Aluminum*, 677 F.2d at 1050; *Collins, et al. v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000). But conclusory allegations, unwarranted deductions of fact, or "legal conclusions masquerading as factual [allegations] will not suffice to prevent [the granting of] a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *see Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997); *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 930 (5th Cir. 1995). A court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt from the face of the plaintiff's pleadings that he cannot prove any set of facts in support of his claim that would entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Garrett v. Commonwealth Mortgage Corp.*, 938 F.2d 592, 594 (5th Cir. 1991); *Kaiser Aluminum*, 677 F.2d at 1050.

> The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory

4

> that he could prove consistent with the allegations in the complaint.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 313 (5th Cir. 2002). "In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins,* 224 F.3d at 498; FED.R.CIV.P. 12(b)(6).

B.  Discussion

1.  Family Medical Leave Act

The City argues that Blues's FMLA claim should be dismissed because it was not brought before the running of the statute of limitations. Alternatively, the City argues that Blues's FMLA claim should be dismissed because it is devoid of any factual basis to support his claim.

In his original complaint filed in state court, Blues did not assert a cause of action under the Family Medical Leave Act ("FMLA"). He did allege that on March 12, 2004, he had his appendix removed. His apparent purpose, however, in mentioning the removal of his appendix was to illustrate disparate treatment he received on account of his race. In particular, Blues alleged,

> 12 March 2004, I had my appendix removed. Operations Engineer Larry martin [sic] called me at home saying, "Did you abandon your job or what? You need to call in every morning prior to working hours while you are out sick. You need to get in contact with Doris to set up an appointment with Dr. Pavey to return to

5

> work after your doctor releases you to return to work." Brett Gregory, [Blues claims], shot himself in the hand and was out for 3 to 4 weeks and returned to work without seeing Dr. Pavey for a return to work release and worked from December to January 13 with a cast on his hand. That was the day he was released to return to work his [sic] actual day he was to see Dr. Pavey was on the 12 of January, the day he missed his doctor's appointment.

(Pl.'s Orig. Comp. at 4.) Nowhere in his original complaint did Blues allege that he was denied any time off for the removal of his appendix or retaliated against for exercising his rights under the FMLA in violation of the statute.

The first time Blues asserted a cause of action under the FMLA was in his first amended complaint filed on May 10, 2006. In that complaint, he alleged he was denied leave under the FMLA "for serious health conditions or was harassed and/or retaliated against for attempting to use his FMLA leave rights." (Pl.'s First Am. Comp. at 8.) His complaint does not state what "serious health conditions" he suffered from other than referring to "a March 2004 appendix related health condition" under a section in the complaint called "FMLA related facts." (*Id.* at 5.) He claims that the City acted intentionally when it denied him leave under the statute or retaliated against him for exercising his rights under the FMLA "due to serious health conditions." (*Id.* at 8-9.) The remainder of his FMLA claim is devoid of any facts and is purely conclusory. Blues's second amended complaint reads the same, except it incorporates by reference the allegations Blues made in his

6

original *pro se* complaint, which add very little. In reality, Blues's complaint reads as if it were cut and pasted from a form book, not drafted with specific facts relevant to his claim for relief under the FMLA.

Generally, "an action may be brought under [the FMLA] not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). If, however, the action brought is "for a willful violation of section 105 [29 U.S.C. § 2615], such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought." 29 U.S.C. § 2617(c)(2). Because Blues's complaint does assert a cause of action against the City for a willful violation of section 105 of the FMLA, he has three years under the statute to bring the action. Although he states he suffered from "serious health conditions" but does not elaborate, he did state that in March 2004 he had his appendix removed and that was one of the "serious health conditions" that forms a basis of his FMLA claim. Therefore, his claim is not barred by the statute of limitations.

The Court concludes, however, that his claim should be dismissed because it is bereft of factual allegations. The FMLA provides two theories for recovery. One is the entitlement theory, which creates substantive rights for employees eligible for coverage under the statute. *See* 29 U.S.C. §§ 2612(a)(1) and

7

2614(a).  The second is the retaliation theory, which prohibits an employer from retaliating against an employee who exercises his rights under the statute.  *See* 29 U.S.C. § 2615(a); *Bocalbos v. National Western Life Ins. Co.,* 162 F.3d 379, 383 (5th Cir. 1998)(explaining the FMLA's two theories for recovery).  Blues's complaint invokes both theories for recovery.

The FMLA provides an eligible employee with a total of twelve weeks of leave during any twelve-month period because of a serious health condition that renders the employee incapable of performing his job functions.  *Mauder v. Metro. Transit Auth. of Harris County,* 446 F.3d 574, 579 (5th Cir. 2006); 29 U.S.C. § 2612(a)(1)(D).  A serious medical condition is defined as an illness, injury, impairment, or physical condition that involves inpatient care or continuing treatment by a healthcare provider. *Id.;* 29 C.F.R. § 825.114(a).

> To establish a *prima facie* case for discrimination or retaliation under the FMLA, the plaintiff must demonstrate that: (1) he is protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave.  If the plaintiff succeeds in making a *prima facie* case, the burden shifts to the employer to articulate a legitimate nondiscriminatory or nonretaliatory reason for the termination. Once the employer has done so, the plaintiff must show by a preponderance of the evidence that the employer's reason is a pretext for discrimination or retaliation.

*Bocalbos,* 162 F.3d at 383.

Nowhere in his complaint does Blues allege any facts that show that he requested time off under the FMLA to have his appendix removed and was denied that time off by the City. In fact, Blues concedes in his original complaint, which has been incorporated by reference in his second amended complaint, that he was not denied time off to have his appendix removed and for recovery. He states in his original complaint that he was required during his time off to call in daily and to set up an appointment with a Dr. Pavey to be cleared to return to work once his doctor cleared him to return. Further, nowhere in Blues's original or second amended complaint does he allege any facts that would demonstrate his suffering any retaliation by the City because he exercised his rights under the FMLA. Although he claims that another employee was not required to call in daily or to see Dr. Pavey before returning to work, that is woefully insufficient for the Court to infer, even when making all reasonable inferences in Blues's favor, that the City willfully and intentionally was retaliating against him for exercising his rights under the FMLA by requiring him to call in daily and advise as to his condition and to set an appointment with the City's doctor to be medically cleared before returning to work. Nothing in the FMLA prevents an employer from implementing those reasonable regulations.

Blues's second amended complaint simply alleges, conclusorily,

9

that he "was denied time off . . . or was harassed and/or retaliated against for attempting to use his FMLA leave rights," that he "properly notified the employer of his need for all leaves caused by a serious health condition," and that the City "interfered, restrained, or denied" or "attempted to interfere, restrain, or deny" him of his rights under the statute, "and/or . . . discriminated, harassed, or retaliated against" him for exercising his rights under the statute.  (Pl.'s Second Am. Comp. at 8.)  His second amended complaint does not explain what his other "serious medical conditions" consisted of, he does not explain when and under what circumstances he informed the City of his need for time off due to his serious medical conditions, he fails to explain that he complied with any reasonable requests from the City to submit documentation of his serious medical conditions, and he fails to allege what actions the City took in retaliation for his seeking to exercise his rights under the statute.  The Court agrees with the City—Blues's complaint reads as if it were copied from a form book.  Mere conclusory allegations or legal conclusions masquerading as factual assertions are insufficient to prevent the granting of a motion to dismiss.  *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir. 1995).  Thus, the Court concludes that Blues's FMLA claim should be dismissed for failure to state a claim.

2.   Fair Labor Standards Act

The City argues that Blues's claim under the Fair Labor Standards Act ("FLSA") should be dismissed because he "has pled no factual basis for this claim." (Defs.' Mot. at 11.) The Court agrees. In his complaint, Blues states that he was "denied overtime . . . on November 16, 2005, when he was called in early." (Pl.'s Second Am. Comp. at 6.) He also states that he was denied the opportunity to earn overtime on several occasions. (*Id.*) Blues claims "one of the significant or motivating reasons and/or retaliating [sic] against plaintiff was his requests for a mandatory leave for serious health conditions including a March 2004 appendix related health condition." (*Id.*) Under his claim for a violation of the FLSA, Blues simply states that he was entitled to overtime pay on November 16, 2005, and the City refused to pay. (*Id.* 10.)

This claim is a pure conclusion. He does not state at what time he began his day, he does not state at what time his day ended, he does not state how many hours he worked that day, and how many hours over and above forty hours he worked for that week. Furthermore, the FLSA does not provide a cause of action for the failure of an employer to give an employee an opportunity to work overtime. Thus, the Court concludes that Blues's FLSA claim should be dismissed for the failure to state a claim.

### 3. 42 U.S.C. § 1981 and Title VII

In his complaint, Blues lumps together his claims under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. These two claims are based on Blues's allegation that he suffered racial discrimination, a race-based hostile working environment, and retaliation when he reported the discrimination. Even accepting the facts alleged in Blues's original *pro se* complaint, the Court concludes that he fails to state a claim.

Blues's active complaint is devoid of any facts supporting an allegation of racial discrimination, race-based hostile working environment, or retaliation. It simply conclusorily states that he had "a lower priority when it came to raises, promotions, transfers, overtime, leaves of absence, and all other terms and conditions of employment." (Pl.'s Second Am. Comp. at 3-4.) It also conclusorily states that he endured "race-based abusive behaviors" from his managers and supervisors, endured "race-based demeaning or degrading slurs or epithets" by several non-African-American co-workers, and suffered "retaliatory and race-based" denials of overtime opportunities and leave for serious health conditions. (*Id.* at 4.) He claims one of the "significant or motivating reasons for harassing and/or retaliating against plaintiff was his complaints opposing race discrimination, harassment, and retaliation towards him." (*Id.*) He complains that the City failed to take "reasonable and effective measures" to prevent and correct the race-based hostile work environment. (*Id.*)

Just as with his other claims, the Court concludes that Blues's section 1981 and Title VII claims should be dismissed because his *pro se* complaint and his second amended complaint are devoid of any factual allegations to support a claim. He fails to provide any description of the racially motivated harassment he suffered. He gives no examples of the racial epithets used, when and under what circumstances they were used, and who used them.

Blues's *pro se* complaint contains numerous conclusory allegations that he was denied certain positions because of his race. For example, Blues alleges that "in the summer 2003, [he] sought to be promoted to street crew leader in the City of Hurst Street Department and was denied. The position, [he claims], was given to another maintenance guy . . . with an outstanding warrant for his arrest and who also fail [sic] to get his CDL in the 60 day of employment [sic]." (Pl.'s Orig. Comp. at 3.) Blues does not provide the race of this other "maintenance guy" with an arrest warrant. He alleges that in October 2003, he "applied for a water maintenance position . . . [and] was denied again." (*Id.*) He alleges in April and June 2004, he "applied again denied water utilities [sic]." (*Id.*) He goes on to list other positions he applied for unsuccessfully and even complains that the City considered his performance reviews and disciplinary record "to keep [him] from get [sic] a promotion and a transfer." (*Id.*)

Although he alleges numerous circumstances where he requested

13

a transfer or applied for a position that entailed a promotion and was denied, he concludes strictly from those denials that it must have been motivated by racial animosity. Even applying the liberal standard of drawing all reasonable inferences in Blues's favor, it is patently unreasonable to infer racial discrimination from the mere fact that an employee was denied a transfer or a promotion. He fails to allege any facts that show on each and every occasion his race was the motivating factor behind the denials of his request for a transfer or a promotion. Blues also fails to allege facts that show that other non-African-American employees similarly situated to Blues were treated more favorably. *See Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990)(stating female plaintiff's "burden is to show that the misconduct for which she was discharged was nearly identical to that engaged in by a male employee whom [the company] retained")(internal quotations and citations omitted).

Further, Blues fails to point to any official policy or practice of the City that was the moving force behind a violation of his equal rights under the law. Instead, Blues's section 1981 claim is based on the fact that he alleges that his managers and supervisors failed to take measures to stop his raced-based hostile working environment. "It is clear that a municipality may not be held liable under section 1983 on the basis of *respondeat superior*." *Johnson v. Nacogdoches County, et al.,* 379 F.3d 293, 308

(5th Cir. 2004); *Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978); *Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.,* 876 F.2d 1231, 1235 (5th Cir. 1989)(vicarious liability against public employer not allowed under section 1981). Thus, the Court concludes that Blues's claims under section 1981 and Title VII should be dismissed for the failure to state a claim.

III. Conclusion

For the forgoing reasons, the Court GRANTS the City's motion to dismiss. Accordingly, all the claims in this case are DISMISSED WITH PREJUDICE for the failure to state a claim upon which relief can be granted.

SIGNED August 13, 2007.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE